Your Honors, good morning. My name is Jeff Galvin from the Downey Brand Law Firm, and with me is my associate, Justin de la Cruz, representing Paul Angevine. Your Honors, since the error of law that we have presented is the ALJ's failure to address and make findings as to the mental impairments of our client, the claimant, I'd like to highlight some of the key evidence of mental impairment that was before the ALJ. Maybe you could tell us first, before you get into that, why should we even consider this? Well, we are presenting, Your Honors, a pure legal error in terms of the ALJ's failure to make any findings as to the mental impairments that were presented. So under the cases cited in our reply brief, there is an exception to the waiver rule that applies when an error of law is presented, the factual record was developed below. Why is this an error of law when even in consideration of the same, the ALJ could come out differently? It's an error of law because the regulations specifically require the ALJ to consider all of the evidence of impairments that's presented, and more specifically, Your Honor, this circuit's law has been very clear for many years that when there is testimony of impairments from treating physicians, the ALJ specifically has to consider that evidence even if it's controverted, and I'm referring to the Cotton v. Bowen case that's cited in our papers. And so it's been the law many years in this circuit, Your Honor, that if there is evidence of an impairment, of a disability, the ALJ has to address that particular doctor's diagnosis if the ALJ is going to disregard it or discount it, and that's why what I wanted to do was point out the three mental health professionals who provided clear diagnoses of mental impairments that's in the record, and for whatever reason, Your Honors, the ALJ simply failed to address the opinions of those doctors, and I'm referring to three mental health professionals who diagnosed Mr. Angivine with PTSD and or depression. Well, before we move on, then, it seems to me that your argument rests solely on the first issue, whether it was a question of law or not, and I didn't see anything in there where you were arguing the second or the third issue, which related to other exceptions. Would that be correct? That's correct, Your Honor. We're focused on the error of law, and I would also point out, in terms of the waiver issue, that this is not something that's being raised for the very first time on appeal, and in the Greger case, that was the issue. In the Greger case, which the government cited, the issue was raised for the first time on appeal and not advocated in front of the Social Security Administration. So we don't really need to look at, based on your argument, whether the government would suffer prejudice or whether there would be, to avoid manifest injustice, based on your argument. Yes, Your Honor. I believe the prejudice argument does creep in on the error of law issue, but our argument is that the government suffers no prejudice because the issue was developed. Just a minute. I really didn't see that in your argument. Your argument, totally, in your brief was, this is an error of law, and just let us talk. That's, well, that's part of it, Your Honor, and I believe our brief did reference the fact that the government has had ample evidence to develop this issue in its respondent's brief. Much of the respondent's brief, in addition to talking about waiver, deals with the evidence of mental impairments that was before the ALJ and the record and during the trial. So the government has had an opportunity to address this in the proceedings before this Court, Your Honor. At least in front of us, though, they didn't get a chance in front of the district court, and I didn't really see in their briefs any argument that they wouldn't be prejudiced for failure to do that. Well, Your Honor, I would respectfully submit that they won't be prejudiced. I appreciate what you want to submit. I'm just trying to get down your argument. Was your client pro se before the district court? No. The client was represented by counsel before the district court. We are pro bono counsel on appeal. The client had representation at the district court. And so, Your Honor, and I think this is the critical issue, because I think what the court's looking for, should be looking for, is a clear affirmative duty on the part of the ALJ that the ALJ failed to meet. And so there were three mental health professionals. One was Dr. Dunkel, and Dr. Dunkel was a clinical psychologist who diagnosed Mr. Angivine with PTSD in 2007. That's at pages 611 to 617. Your client's a veteran, right? He is, Your Honor. Yes. Pages 611 to 617 and 671 of the administrative record, and I'm referring to the case that was lodged with the district court, which is document 10 on the district court docket. Then there was Dr. Kuzam, a psychiatrist who diagnosed Mr. Angivine with PTSD. And Dr. Kuzam specifically found in his findings that that diagnosis of PTSD had left Angivine unable to perform his regular work. So it was not just a PTSD diagnosis in the abstract. Dr. Kuzam was certifying that the PTSD left Angivine unable to perform his regular work. And Dr. Kuzam would later diagnose Angivine with PTSD with depression over the course of 2007 to 2008. And I would cite administrative record pages 677 to 678, 733, 766, 732, 800, 963, and 918. And then the last doctor, Your Honor, would be Dr. Tan, T-A-N, a psychiatrist who diagnosed Angivine as suffering from depressive disorder, not otherwise specified, in June and October 2008. And more particularly, on admission to the hospital in October 2008, Dr. Tan noted in her record that Mr. Angivine was suicidal and rated him a 10 out of 10 on a depression scale. And that's at pages 867 to 871, 879 to 880, 969 to 970. So those are three, Your Honor, treating physicians who made very specific diagnoses of PTSD and depression. None of those positions' names are referenced in the ALJ's decision here. And so the ALJ, under the case I cited, Cotton v. Bowen, even where there is controverted evidence of psychological or mental impairments, or any type of impairment, where a doctor has offered an opinion that there is an impairment, the ALJ has to provide specific and legitimate reasons for rejecting that diagnosis. And here the ALJ said nothing about any of those doctors. And not only did that testimony, not only was that testimony in the midst of the paper records that were before the ALJ, much of the hearing transcript focused on depression. PTSD was also referenced. More specifically, Mr. Angivine testified in front of the ALJ that he was fired from his last job and that he could not work because of his depression. And he also referenced his problems with alcohol. And that's at pages 41 and 46 to 49 of the administrative record. He also discussed his problems concentrating at school and at home, the violent nightmares he experienced, and flashbacks that involved the abduction and rape of his six-year-old daughter and the death of an Army buddy. And that was referenced at pages 64 to 68. So not only was this in the charts that was in front of the ALJ, the ALJ heard at length during that administrative hearing, heard Mr. Angivine talking about his issues. And so there really was a wholesale failure here to address the impairments. To the extent the government suggests that alcohol explains away the ALJ's decision, I would note, Your Honor, that there's clear authority in this circuit for the proposition that the ALJ is not to consider alcohol during the five-step sequential evaluation of disability. And that would be the case of Bustamante v. Massinari, 262 F. 3rd, 949 at page 952. So first the ALJ had to walk through the five-step sequential disability process without trying to attribute one impairment or another to alcohol. And then if he was determined to be disabled, then the ALJ could go on and consider the alcohol issue. And I'll reserve 45 seconds for rebuttal, Your Honor. Have a good. Thank you. Good morning, Your Honors. This is Elizabeth Feer for the Acting Commissioner of Social Security, Carolyn Colvin. This case should be just a pure waiver issue. This was not raised at all in district court. And I'd like to point out that the matter's been fully briefed. How is the commissioner prejudiced at this point? Seems to me that the factual record's been fully developed. All of the counsel's arguments relied on not evidence outside the record, but this was evidence that was squarely before the ALJ that the ALJ failed to address. And we've got the arguments now. So how is the commissioner prejudiced? Well, I think Judge Smith pointed out, pointed to a little bit of it. We have a tactical issue of how to brief this. You know, we're answering an issue that was completely waived and completely not raised in district court. So we have to decide how much of the waiver we might be waiving by arguing prejudice, for example. We could we don't know how much to get into. If the court doesn't buy the waiver argument, why this even if it's going to go to the merits of the case, there's a harmless error. But we don't want to lessen the impact of the waiver argument. This is a military veteran with PTSD, correct? Well, he actually, the VA says he doesn't have PTSD. That's the latest information from the VA. They say he has no confirmed diagnosis. The VA says that this, it's clear he's a veteran. Yes. And the claim is that he suffers from PTSD, and at least one if not two medical professionals have supported that diagnosis. That's true, but what's notably absent from anything, from this entire record. Correct, he's a veteran. It's correct, he's been diagnosed with PTSD. He's been diagnosed with it, but. Okay, and that leads to my next question. Hasn't the Supreme Court made clear in far more serious circumstances that veterans are to be treated differently? They said so in the case involving the statute of limitations for the filing of a habeas petition in a death penalty case. I'm not familiar with that case. I am familiar with Shinseki v. Sanders, though, which is. Are you familiar with the fact that the U.S. Supreme Court has told us in no uncertain terms that military veterans are different and should be treated differently with respect to waiver issues? Honestly, I was not familiar with that. Is it your client's position that the fact that this man is a veteran is of no consequence? Not at all, but if, this is a record full of VA records. I don't know why, frankly, the commissioner is so insistent on the waiver issue in this particular case. The record is replete with numerous instances where he has not only sought treatment for depression and PTSD, but has had a formal diagnosis of PTSD. So, under these circumstances, when the record has numerous instances of mental impairments, what do the regulations require the ALJ to do? Well, there is a couple of things that I take issue with in Your Honor's question. First of all, he has not had significant treatment for PTSD. And, in fact, when he was referred to the PTSD support group, the VA experts on PTSD said he didn't qualify. I said he had sought treatment for depression and PTSD. But go on to the second part of my question. What do the regulations require the ALJ to do in instances where the record demonstrates mental impairments? Well, the record in this case demonstrates diagnoses of mental impairments. But there are no mental limitations in this record. And I would like to direct the Court's attention to limitations. But is the ALJ required to address it and to follow special techniques? Okay. Yes. But, first of all, my opponent never raised the issue of the special technique if you're referring to 1520A and Kaiser. But the other thing is, if you don't want to buy the waiver, but first I want to just point out two things about it. This is not my opponent says an error of law. It's actually a pure question of law. This is not a pure question of law. We might say, yes, the ALJ is supposed to address all of the significant impairments in the record. But how the facts in the record facilitate the application of that law is a question of fact. This is a very fact-intensive situation we have here. It's not a pure question of law. Then I could get to manifest injustice. But given the fact that you're not sold on the waiver, I can use the factors for the manifest injustice to say, if you're going to go beyond the waiver, any error the ALJ committed here by not addressing specifically the mental conditions is harmless. And first of all, while the ALJ didn't discuss each of those doctors specifically, he does refer to all of the exhibits where those doctors' reports are. The ALJ was clearly aware of this man's treatment with the VA. And one of the last things in the – so this – Dr. Cusan is the only one that made indications that this claimant was limited, but he didn't assess limitations. He just said he's disabled. In 2008, he says he's disabled from his regular work. He hadn't worked since 2005, and he's going to college during all of this time. So where is the mental limitation stemming from the impairments? There's a big difference between a diagnosed impairment and an impairment. Kagan in 2005, as a truck stop manager, he was fired for drinking and depression. Okay. So in 2008, Dr. Cusan says he's disabled from his regular work. He hasn't worked for three years. So that's kind of a meaningless assertion. And in September of 2008, when he appeared before the ALJ, when asked, he said he was unable to work due to depression and alcoholism and sought treatment, on average, twice a month in the last year for depression. So my question to you is that if the ALJ didn't discuss or consider mental impairments and didn't follow the special psychiatric techniques that he's required to do at Step 2, then how could he do a proper evaluation at Step 5? Well, it's – I think it's clear this ALJ was aware of this entire record. When you look at the claimant's mental condition, he's been diagnosed with PTSD, which the VA, in November 2008, says was not a legitimate diagnosis. They clearly say, we don't believe that the incidents that the claimant is saying triggered his PTSD actually occurred. That's on page 201. It actually starts on page 200 to page 202, where they say, you know, Dr. Dunkel, who's the first person to have diagnosed PTSD, relied on your account of – your account of – the ALJ found the claimant not credible. That's not challenged. But the VA specifically, after research, used – the claimant said a young girl was killed in a motorcycle accident and used to sustain numerous injuries. They had – there was no record of a fatality in that incident. And in fact, if you look at page 611 in the record, the claimant says his hand went through a window and it killed somebody. That doesn't even make sense. So you have the VA itself saying, we don't think you have PTSD. That's very significant evidence. Following that, or shortly before that, you have the VA social worker – a VA social worker reviewed the whole chart, no indication of diminished mental capacity. That's at page 790 in the record. That's very powerful evidence that even if this man was diagnosed with these conditions, they were not limited. And my opponent, no doctor – no one has ever identified any limitations that allegedly stem from these conditions. So if you're going to say the ALJ error, we're not going to just go with a straight waiver, that error is harmless. The harmless error standard is whether or not – whether the ALJ's error was inconsequential to the ultimate finding of disability. When you have the VA itself saying no limitations, how is that not an inconsequential error? I understand your argument, and I also understand counsel's argument. I guess I'm saying, if there is error, and if this was legal error, at that point, why don't I just send it back to the ALJ to sort through all this stuff that you and counsel are suggesting are the appropriate points of your arguments? I mean, you are suggesting that the evidence is pretty clear that this nonetheless there wouldn't have been anything here. I don't even know what the ALJ would say about those arguments. I don't know if the ALJ agrees with them or disagrees with them, because the ALJ didn't give it a chance to deal with that. So if, in fact, we get through whether I can look at this at all, it seems appropriate to send it back and have the ALJ look at it, doesn't it? No, for all the reasons I just explained to Judge Wen's question. There's no evidence – Come to that conclusion on my own. Okay. Well, then I would – there's – what are the mental limitations that the ALJ failed to address? It's very clear he looked at the whole record. It's very clear the VA, through which the claimant received all of his treatment, doesn't believe he has any mental limitations. Why would we send it back for the formality of the ALJ to go through the special technique, which also wasn't raised, or for the ALJ to once again issue a decision saying this claim is not disabled? In the context of the ALJ hearing, if mental impairment is raised, isn't the ALJ required sua sponte to order the technique? Well, no, he's not. He's supposed to – he is supposed to address it. That's true. And this – we wouldn't be here if he had. But – Precisely. The DDS doctor, Dr. Liu, who my opponent says he confuses what that report is, she's the state agency doctor, reviewed the record in May 2007 and said non-severe, and she has a summary on pages 641 and 42 about what's already in the record at that point. But you would agree with Judge Hawkins, I guess, that if Angevine had made a colorable claim of mental impairment, then the ALJ should have applied the special psychiatric review technique. So what we're really – what you're really arguing to Judge Hawkins is this was not colorable. Yes. And – and if – even if it was, any error in the ALJ not addressing it is harmless, given what the evidence actually says. Okay. Thank you. Thank you very much for your argument. Thank you, Your Honors. The ALJ's reference to all the exhibits and all the evidence obviously doesn't cut the mustard here, Your Honor. The rule is absolutely clear that when you have three treating mental health doctors who have diagnosed Angevine with mental impairments, the ALJ has to discuss that evidence specifically. We're not here for a substantial review analysis because the ALJ didn't make the necessary findings upon which the substantial evidence review would be based. So you're suggesting that by saying failing to make any analysis doesn't make it a mixed question of law or fact because the analysis itself would be a factual analysis? Because the – not quite, Your Honor. I'm saying that because the ALJ was required by law to assess the mental health evidence, it did not. That was an error of law under the established precedent. So send it back to the ALJ to take another crack at it? Send it back to the ALJ to take another crack at it. The VA report that was referenced is incomplete and the ALJ should be reviewing the evidence that was in the record. Thank you very much, Mr. Galvin. Mr. Galvin, we do this rarely, but I'm happy to do it in this instance. I noted that you took this on a pro bono as a part of the pro bono representation project. I thank you very much for your excellent work here, for your argument, and for coming and being a part of this project. And I thank your co-counsel there to the extent he was involved in helping you, which when I was in his shoes, I always thought I was the guy doing it, and you just stood up and did the argument. So I'm thanking him, too. But I really do thank you. This project, pro bono project, is of much importance to us in our court, and I thank you very much for that. And I thank counsel very much for her argument as well. Thank you, Your Honor. It's been a pleasure and a privilege. Very much. Case 11-15678, Angebine v. The Commissioner, is submitted.
judges: Hawkins, Smith, Nguyen